DALLAS CENTRAL APPRAISAL DISTRICT, Appellant,

v.

Shihjane and Soledad WANG, Appellees.

No. 05–01–00712–CV.

Court of Appeals of Texas, Dallas.

June 26, 2002.

Mike M. Tabor, Dallas, for Appellant.

Thomas H. Keen, Robert R. Gibbons, Matthew Roy Scott, Bell, Nunnally & Martin, L.L.P., Dallas, for Respondent.

Before Justices O'NEILL, FARRIS,[1] and ROSENBERG.[2]

## OPINION

DAVID F. FARRIS, Justice (Retired).

In two issues, the Dallas Central Appraisal District (DCAD) contends the trial court erred in granting Shihjane and Soledad Wang's (the Wangs) motion for summary judgment and denying DCAD's motion for summary judgment. The effect of the trial court's ruling was a determination the Wangs' property was not encumbered by a tax lien for additional ad valorem taxes owed on the property following DCAD's removal of tax exemptions erroneously claimed by a previous owner of the property. We conclude the Texas Tax Code imposes a tax lien on real property based on a back-appraisal to remove erroneously claimed exemptions regardless of whether the property has been sold by the party who benefitted from the exemptions and the Texas Constitution does not prohibit such a lien. We reverse the trial court's granting of the Wangs' motion for summary judgment and denying of DCAD's motion for summary judgment and render judgment for DCAD.

### FINALITY OF JUDGMENT

The Wangs suggest the trial court's judgment may be interlocutory because it "intended, but fails, to (1) specify that (a) DCAD must reinstate the removed exemp-

tions and (b) DCAD cannot remove the exemptions in the future, and (2) award the Wangs' requested attorneys' fees." The judgment states it is intended to be final and "disposes of all claims of all parties." This clear, unequivocal language must be given effect. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex.2001). We conclude the trial court's judgment is final for purposes of appeal.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mansel Vines, the owner of a home at 3509 Oak Creek Circle in Dallas, Texas (the Property), claimed and received exemptions from the appraised value of the Property available under the tax code to owners of a residence homestead over sixty-five years of age. Vines died in August 1998. In August 1999, the Wangs purchased the Property. The Wangs' title company acquired from a private business a certificate showing no taxes were due on the Property. DCAD does not dispute that a certificate issued directly by the taxing authorities would also have shown no taxes were owed on the Property at the time of purchase.

In October 1999, DCAD determined the Property was not qualified for the residence homestead and over–65 exemptions after Vines's death. On December 9, 1999, DCAD notified the Wangs of DCAD's intent to retroactively remove these exemptions. Following the Wangs' unsuccessful administrative challenge, DCAD removed the over–65 and residence homestead exemptions for tax year 1999 and back-appraised the Property to add the new value

---

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

to the year 2000 tax roll.[3] This back-appraisal generated additional ad valorem property taxes against the Property, and DCAD contended there was a tax lien on the Property for the additional amount of taxes owed.

The Wangs filed suit in state district court seeking to prevent DCAD from removing the exemptions from the Property. Both parties moved for summary judgment. The Wangs asserted allowing a tax lien to attach to the Property pursuant to the back-appraisal was illegal, improper, and constituted an unlawful and unconstitutional taking of property in violation of article VIII, section 15 of the Texas Constitution. DCAD contended it was statutorily required to remove the exemptions. The trial court granted the Wangs' motion for summary judgment and denied DCAD's motion for summary judgment. This appeal resulted.

### STANDARD OF REVIEW

#### A. Summary Judgment

The standard of review in summary judgment is well established. TEX.R. CIV. P. 166a(c); *see McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). When both parties move for summary judgment, each party "bears the burden of establishing that it is entitled to judgment as a matter of law." *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex.1993). When we review cross-motions for summary judgment, we consider both motions and render the judgment the trial court should have rendered. *Coastal Liquids Transp. L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 883 (Tex. 2001).

#### B. Statutory Construction

We construe statutes as written and, if possible, determine the legislature's intent from the statute's language. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). We must consider the statute in its entirety, including the consequences that would follow from each proposed construction. *Atascosa County v. Atascosa County Appraisal Dist.*, 990 S.W.2d 255, 258 (Tex. 1999). So long as another reasonable interpretation exists, we are required to reject an interpretation of a statute that defeats the purpose of the legislation. *Id.* We should, if possible, interpret the statute in a manner that avoids constitutional infirmity. *Appraisal Review Bd. v. Tex–Air Helicopters, Inc.*, 970 S.W.2d 530, 532 (Tex.1998).

### ANALYSIS

In two points of error, we are presented with a very narrow issue: whether a back-appraisal pursuant to section 11.43(i) of the tax code after the property has been sold and the resulting lien on the property for the additional taxes owed due to the back-appraisal violates article VIII, section 15 of the Texas Constitution. DCAD contends the trial court erred in granting the Wangs' motion for summary judgment and denying DCAD's motion for summary judgment because: (1) the tax code requires the removal of erroneously claimed exemptions; (2) upon Vines's death, the Property was no longer entitled to the claimed exemptions; and (3) the resulting tax lien on the Property does not violate the Texas Constitution. The Wangs contend the back-appraisal of the Property

---

**3.** The parties disagree over whether DCAD removed the over 65 exemption for tax year 1998 as well as 1999. Because Vines was eligible for the over 65 exemption on January 1, 1998, the exemption continued for the entire tax year. *See* TEX. TAX CODE ANN. § 11.42(c) (Vernon Supp.2002).

after it changed ownership forces the Wangs to pay the tax liabilities of a previous owner in violation of article VIII, section 15 of the Texas Constitution.

### A. Statutory Scheme

DCAD first argues it had a non-discretionary duty to perform a back-appraisal to remove erroneously claimed exemptions, and the Property is subject to a lien for any additional taxes owed following the back-appraisal. We conclude the Texas Constitution and the tax code mandate this result.

Article VIII, section 15 of the Texas Constitution provides:

> The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes and penalties due by such delinquent, under such regulations as the Legislature may provide.

TEX. CONST. art. VIII, § 15. This lien attaches to the real property on January 1 of the tax year "whether or not the taxes are imposed in the year the lien attaches." TEX. TAX CODE ANN. § 32.01 (Vernon Supp. 2002); *see Corpus Christi People's Baptist Church v. Nueces County Appraisal Dist.*, 904 S.W.2d 621, 622 (Tex.1995) ("Taxes are imposed upon real property each year as of January 1. On that date a lien authorized by article VIII, section 15 of the Texas Constitution attaches to the property to secure their payment.") (citations omitted); *Jackson v. Stonebriar P'ship*, 931 S.W.2d 635, 637–38 (Tex.App.-Dallas 1996, writ denied) ("Under Texas law, a property owner's liability for ad valorem taxes for any given year arises as of January 1 of that year regardless of when the

tax is assessed."). The statutory attachment of the lien is treated as the assessment under article VIII, section 15. *Jackson*, 931 S.W.2d at 638.

■ Section 11.13 of the tax code allows for a certain portion of the real property to be exempted from the ad valorem tax if it is a residence homestead or if the owner of the property is over sixty-five years of age. TEX. TAX CODE ANN. § 11.13 (Vernon Supp. 2002). Once allowed, both the residence homestead and the over 65 exemption apply to the real property "until it changes ownership or the person's qualification for the exemption changes." *Id.* § 11.43(c). In other words, it is not necessary for the property owner to re-claim these exemptions yearly. *Dallas Cent. Appraisal Dist. v. Brown*, 19 S.W.3d 878, 880 (Tex.App.-Dallas 2000, no pet.). However:

> If the chief appraiser discovers that an exemption that is not required to be claimed annually has been erroneously allowed in any one of the five preceding years, the chief appraiser shall add the property or appraised value that was erroneously exempted for each year to the appraisal roll as provided by Section 25.21 of this code for other property that escapes taxation.

TEX. TAX CODE ANN. § 11.43(i); *see Atascosa County*, 990 S.W.2d at 257 ("Tax Code § 11.43(i) mandates that the chief appraiser back-appraise erroneously exempted property...."); *McPhail v. Tax Collector*, 280 S.W. 260, 265 (Tex.Civ.App.-Dallas 1926, writ ref'd) (if taxable property escapes assessment, "it becomes the duty of the assessor to assess the property for the omitted year"). The back-appraised amount is added to the current year's appraisal records and does not retroactively change the appraisal rolls for the years the exemptions were erroneously claimed. TEX. TAX CODE ANN. § 25.21 (Vernon 1992); *Atascosa County*, 990 S.W.2d at 260.

Accordingly, we conclude (1) a tax lien attached to the Property for ad valorem taxes on January 1, 1999; (2) the Property was subject to back-appraisal for up to five years to remove any exemptions that were erroneously claimed in 1999; (3) the additional taxes owed due to the back-appraisal were included in the tax rolls for the year 2000; and (4) the lien for the additional taxes owed due to the back-appraisal attached as of January 1, 1999.

We are concerned about a statutory scheme that requires the back-appraisal of property for up to five years to remove an erroneously claimed exemption and then allows the real property of a party who did not benefit from the erroneously claimed exemption to be encumbered with a tax lien for the newly appraised amount. Although the current property owner has a right to protest the back-appraisal, he is potentially left in the position of attempting to justify exemptions claimed by strangers who are several steps back in the chain of title. The heavy burden placed on the property owner to prove a previous owner's right to an exemption and the draconian consequences of the property owner's failure to carry that burden could very well prevent any hearing on the protest from being a meaningful one. *See Franklin v. Sherman Indep. Sch. Dist.*, 53 S.W.3d 398, 403 n. 3 (Tex. App.-Dallas 2001, pet. denied) (per curiam) (at a minimum, due process requires an opportunity to be heard in a meaningful manner). Further, the back-appraisal and imposition of a retroactive lien on the real property of an individual not personally liable for the taxes could well be an arbitrary exercise of DCAD's power. *See Parvin v. Dean*, 7 S.W.3d 264, 276 (Tex.App.-Fort Worth 1999, no pet.). The Wangs, however, have raised neither a procedural nor a substantive due process challenge, and we may not consider those arguments in resolving the issue presented to us. *McIntyre v. Wilson*, 50 S.W.3d 674, 688 (Tex.App.-Dallas 2001, pet. denied).

### B. Validity of Back Appraisal

■ DCAD next contends that after Vines's death, the Property was no longer entitled to the over 65 and residence homestead exemptions. Once the residence homestead and over 65 exemptions were allowed during Vines's ownership of the Property, the exemptions applied until the Property changed ownership or Vines's qualification for the exemption changed. We conclude, as a matter of law, that Vines was no longer qualified for either exemption after his death in August 1998. *See* TEX. TAX CODE ANN. §§ 11.13(a), (c) & (j) (Vernon Supp.2002) (requiring residence to be owned and occupied as principal residence by individual to qualify for residence homestead and over 65 exemptions).[4] Thus, the Property no longer qualified for either exemption as of January 1, 1999,[5] and DCAD had a non-discretionary duty to back-appraise the Property to remove the erroneous exemptions for the 1999 tax year. *Atascosa County*, 990 S.W.2d at 259 ("We therefore conclude that the Appraisal District and chief appraiser have a nondiscretionary duty to back-appraise property that has been erroneously exempted for up to five years."); *Brown*, 19 S.W.3d at 880. Section 11.43(i)

---

**4.** A qualified residential structure does not lose its character as a resident homestead simply because a qualified owner temporarily ceases to occupy it as a principal residence if the owner does not establish a different principal residence and intends to return and occupy the structure. TEX TAX CODE

§ 11.13(*l*). After his death, Vines could not intend to return and occupy the Property.

**5.** The eligibility for the exemption is determined as of January 1 of the tax year. TEX TAX CODE ANN § 11.42(a) (Vernon Supp.2002).

does not contain an exception to the duty to back-appraise for property that is no longer owned by the party who benefitted from the erroneously claimed exemption, and we may not create one. *Fitzgerald*, 996 S.W.2d at 867 (declining to "judicially amend the statute to add an exception not implicitly contained in the language of the statute"); *Pub. Util. Comm'n v. Cofer*, 754 S.W.2d 121, 124 (Tex.1988) (orig.proceeding) ("A court may not write special exceptions into a statute so as to make it inapplicable under certain circumstances not mentioned in the statute.").

### C. Attachment of Lien

▮ As noted, a tax lien attached to the Property on January 1, 1999 for the additional taxes due after the back-appraisal of the Property. The Wangs argue that allowing a lien to attach to the Property for exemptions that were erroneously claimed by a previous owner unconstitutionally forces them, innocent purchasers of the Property, to pay another person's taxes or risk the loss of the Property through the foreclosure of the lien. But, pursuant to section 32.01 of the tax code, the lien attached January 1 of the tax year the exemptions were erroneously claimed, not at the time of the back-appraisal.

We have located no authority discussing the attachment of a lien pursuant to section 32.01 based on a back-appraisal of real property that was sold prior to the back-appraisal. However, this issue was considered under a prior statutory scheme in *City of San Antonio v. Terrill*, 202 S.W. 361 (Tex.Civ.App.-San Antonio 1918, writ ref'd), in which a subsequent purchaser claimed his real property should not be encumbered by a tax lien for unpaid taxes for years prior to his purchase of the property when the taxes had not been assessed at the time he purchased the property.[6] The court of civil appeals rejected this position:

> The claim of appellee that he was an innocent purchaser cannot be sustained. He was charged with knowledge that the land of B.E. Horton had not been assessed for taxes during the years 1894 to 1908, and that they could be assessed by the commissioner of taxation, and doubtless would be assessed when the omission was discovered. It is true that the omitted assessments were for taxes that arose before appellee purchased the land, but it was incumbent on him to examine records and assessment rolls before purchasing and protect himself against back taxes.

*Id.* at 362; *see Starnes v. Bledsoe Indep. Sch. Dist.*, 257 S.W.2d 836, 839 (Tex.Civ. App.-Amarillo 1953, writ ref'd n.r.e.) (op. on reh'g) (per curiam) ("Further, Chitwood was chargeable with notice as to the status of the assessment and is therefore not an innocent purchaser of the land. No personal judgment rests against Chitwood . . . and he is not injured by the mere rendition of a judgment foreclosing the tax lien on the land in issue since the land was subject to the lien for the taxes even though there had been no assessment whatsoever."); *Tex. Bank & Trust Co. v. Bankers' Life Co.*, 43 S.W.2d 631, 632 (Tex.Civ.App.- Waco 1931, writ ref'd) ("Our courts hold that no one can be an innocent purchaser of land as against the lien held by the state or city for taxes due.").[7] In *Terrill* and

---

6. The statutory scheme at issue in *Terrill* provided for the back-assessment of property that had not been rendered for taxation as well as the attachment of a tax lien to the property for the back taxes. *Id.* at 363.

7. *See also Hunt v. State*, 110 Tex. 204, 207, 217 S.W. 1034, 1035 (Tex.1920) (noting without discussion that tax lien attached to real property for back taxes even though taxing authority did not send notice of delinquency

*Starnes,* the sale of the property prior to the assessment of the tax did not extinguish the tax lien on the property.

For the same reasons, the lien for additional taxes assessed pursuant to the back-appraisal followed the Property into the Wangs' hands. The tax certificate obtained by the Wangs not only showed the owner of the Property to be Vines, but that Vines was claiming the residence homestead and over 65 exemptions. Because the Wangs knew the vendor of the Property was not Vines, they were on notice their vendor may not have taken all steps necessary to ensure all taxes on the Property had been paid. The Wangs were required to take the necessary steps to protect themselves from any back-taxes owed on the Property due to a previous owner's failure to meet its statutory obligations. By failing either to inquire into the status of the claimed exemptions or to obtain a tax certificate pursuant to section 31.08 of the tax code (discussed more fully below) the Wangs assumed the risk the Property could be back-appraised to remove the erroneously claimed exemptions and the Property would be encumbered by a lien for the additional taxes. The consequences to the Wangs, as to Mr. Terrill and Mr. Chitwood, from assuming that risk are harsh, but we cannot read exceptions into a broad statutory scheme based on the outcome in a specific factual situation. *Cofer,* 754 S.W.2d at 124 ("We are not free to rewrite the statutes to reach a result we might consider more desirable, in the name of statutory construction.").

### D. Constitutionality of Lien

■ The Wangs argue the lien on the Property due to the back-appraisal is unconstitutional because article VIII, section 15 of the Texas Constitution only allows the property of the delinquent taxpayer to

be sold to pay the delinquent taxes. Article VIII, section 15 provides (1) a special lien attaches annually to real property for the assessed taxes; (2) the taxing authority can seize and sell all property belonging to a delinquent taxpayer for the payment of the delinquent taxes; and (3) "such property" may be sold for the taxes owed by the delinquent taxpayer pursuant to statutory regulations. The Wangs argue the second clause requires the delinquent taxpayer to own the real property that is subject to the lien before it can be seized for delinquent taxes. We disagree.

■ "Such property" referred to in the third clause of article VIII, section 15 refers to (1) the real property that is the subject of the tax and to which the special lien has attached and (2) all property owned by the delinquent taxpayer. There is no constitutional requirement that the real property subject to the lien still be owned by the delinquent taxpayer before it can be seized and sold for the delinquent taxes. The sale of property subject to a tax lien does not extinguish the lien. *Franz v. Katy Indep. Sch. Dist.,* 35 S.W.3d 749, 754 (Tex.App.-Houston [1st Dist.] 2000, no pet.) ("One who purchases property does so subject to any delinquent taxes."); *see City of San Antonio v. Toepperwein,* 104 Tex. 43, 46, 133 S.W. 416, 417 (1911). Any property that is not subject to the special lien must still be owned by the delinquent taxpayer before it can be seized and sold for the outstanding taxes.

Neither the tax code nor the Texas Constitution supports the Wangs' argument that property that has been sold is not encumbered by a lien for additional taxes owed due to a back-appraisal of the property. In *Brown,* we concluded a "construction of the property tax code [that] would bar an appraisal district from re-

until over fourteen years after property was sold).

moving an erroneous exemption as long as the current property owners were successful in hiding the most recent conveyance of the property" was unreasonable. *Brown,* 19 S.W.3d at 882. In a similar fashion, barring the taxing authority from removing an erroneous exemption simply because the owner managed to conceal the erroneous exemption until he sold the property would also be unreasonable.

 We conclude a tax lien encumbers real property for additional taxes owed due to a back-appraisal to remove an erroneously claimed exemption regardless of whether the property was sold prior to the back-appraisal. *Starnes,* 257 S.W.2d at 839; *Terrill,* 202 S.W. at 362. Although the resulting lien is a significant burden on the subsequent purchaser, an important public policy mandates this result:

> To hold that laws providing for the assessment of back taxes on land do not create a lien on the same, which would follow the land, no matter into whose hands it might pass, would hamper the collection of taxes and cripple the finances of the state. Appellee would not be liable personally for the taxes, but the lien would follow the land into his hands.

*Terrill,* 202 S.W. at 362. DCAD's nondiscretionary duty to back-appraise property to remove erroneously claimed exemptions, regardless of current ownership, is consistent with the taxing unit's expectation of receiving necessary revenue. *Atascosa County,* 990 S.W.2d at 257.

### E. Statutory Protection from Lien

Further, the tax code does not leave subsequent purchasers of real property without a means of protecting themselves from delinquent taxes existing at the time of purchase:

> [I]f a person transfers property accompanied by a tax certificate erroneously showing that no delinquent taxes, penalties, or interest are due a taxing unit on the property, the unit's tax lien on the property is extinguished and the purchaser of the property is absolved of liability to the unit for delinquent taxes, penalties, or interest on the property. The person who was liable for the tax for the year it was imposed remains personally liable for the delinquent tax, penalties, and interest.

Tex. Tax Code Ann. § 31.08(b) (Vernon 1992). The tax certificate must be issued by the taxing authority. *Id.* § 31.08(a). Thus, if the Wangs had obtained tax certificates from the taxing authorities at the time they purchased the Property, the tax lien for the back-appraised taxes would have been extinguished under section 31.08(b). *See State v. Hagerty,* 479 S.W.2d 729, 732 (Tex.Civ.App.-Dallas 1972, no writ) (interpreting former Texas Revised Civil Statute Annotated, article 7528a, now section 31.08); *Int'l Paper Co. v. State,* 380 S.W.2d 18, 22 (Tex.Civ.App.-Texarkana 1964, writ ref'd n.r.e.) ("The purpose of the statute was to relieve the purchasers of property from the secret tax liens upon property for which they have purchased and paid, or obligated themselves to pay for. This relieves the purchaser of the responsibility of buying property and later having a tax lien forced upon the same and requiring him to pay off the tax lien in order to keep his property.") (interpreting former article 7258a).[8]

---

8. The Wangs argue at least one taxing authority has taken the position that, because the back-appraisal had not been performed when the Wangs purchased the Property, a tax certificate showing no delinquent taxes would not have been erroneous and would not have extinguished the lien on the Property. We disagree with this position. The lien for the taxes assessed due to the back-appraisal attached January 1 of the year the exemption

DCAD concedes any certificate obtained by the Wangs pursuant to section 31.08(a) would be identical to the one the Wangs actually obtained from a private entity. However, the statute requires the certificate to be issued by the taxing authority. While this leads to an inequitable outcome in this case, we may not disregard the statutory requirements. *Cofer*, 754 S.W.2d at 124.

Although the tax code authorizes the taxing authority to back-appraise property for up to five years, there is a duty to perform the back-appraisal diligently. If the taxing authority fails to back-appraise the property prior to the sale of the property and the purchaser of the property obtains a tax certificate pursuant to section 31.08, the lien on the property for the back-appraised taxes is extinguished.

Accordingly, the trial court erred in granting the Wangs' motion for summary judgment and in denying DCAD's motion for summary judgment. We sustain DCAD's two points of error.

### Conclusion

Under the narrow issue presented to us, we conclude the back-appraisal of property pursuant to section 11.43(i) of the tax code and the attachment of a tax lien to the property for the additional taxes owed due to the back-appraisal does not violate article VIII, section 15 of the Texas Constitution regardless of whether the property was sold prior to the back-appraisal. We reverse the trial court's judgment and render judgment for DCAD that the Wangs take nothing on their claims.

was erroneously claimed. Regardless of whether DCAD discovered the erroneous exemptions and actually back-appraised the

Property, those taxes were due at the time the Wangs purchased the Property. Any certificate showing otherwise would be erroneous.